UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LUCIO MENDEZ,                                        :
                                                     :   ECF Case
                              Plaintiff,             :   Docket Number 07 CV 11174 (LLS)
                                                     :
            -against-                                :
                                                     :   **NOTICE OF MOTION FOR ENTRY**
NOOCH, INC.; RED DOT COM, INC. d/b/a/                :   **OF DEFAULT JUDGMENT AND**
Tangerine Restaurant and Café; and SUAN LAY          :   **AWARD OF DAMAGES AS TO**
ONG, a.k.a. Janice Ong,                              :   **DEFENDANTS NOOCH, INC. AND**
                                                     :   **RED DOT COM, INC.**
                              Defendants.            :
                                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

     Pursuant to pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Lucio Mendez hereby moves this Court to enter a Default Judgment and an award of damages in the above-captioned action.

     This Motion is supported by copies of the summons and complaint, Plaintiff's affidavit, the declarations of Plaintiff's attorneys, Plaintiff's Statement of Damages, a Clerk's Certificate, and a Memorandum of Law in Support of Plaintiff's Motion and accompanying Exhibits.  As indicated by the attached Affirmation of Service, this Motion has been served on all defaulting parties to this action.

Dated: Brooklyn, New York
      May 27, 2007

                              Respectfully Submitted,

                              MAKE THE ROAD NEW YORK, INC.
                              Attorneys for Plaintiffs
                              301 Grove Street
                              Brooklyn, New York 11237
                              (718) 418-7690 x 224

                              _____

                              By: Elizabeth Wagoner (EW 2101)

Exhibit A
Complaint

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07  CV  11174

------------------------------------ x

LUCIO MENDEZ,                          :

                 Plaintiff,       :  ECF Case
                        :  Docket Number 07 CV _____
         -against-                 :

NOOCH, INC.; RED DOT COM, INC. d/b/a/  :  **COMPLAINT**
Tangerine Restaurant and Café; and SUAN LAY  :
ONG, a.k.a. Janice Ong,                :  <u>**JURY TRIAL DEMANDED**</u>

              Defendants.       :

------------------------------------ x

Plaintiff Lucio Mendez ("Plaintiff"), by his attorneys Make the Road New York, Inc.,
alleges as follows:

### NATURE OF THE ACTION

1.    This is an action to recover unpaid wages, damages, and interest due Plaintiff by
Defendants. For approximately five years, Plaintiff was drastically underpaid for his work as a
janitor and dishwasher in restaurants owned and managed by Defendants.

2.    Plaintiff worked between 74 to 111 hours per week, for a wage that ranged from $2.70 to
$5.40 per hour. Not once during his employment did Plaintiff receive overtime pay when he
worked more than 40 hours per week, as required by federal and state law.  Plaintiff was also
systematically denied the daily spread-of-hours supplement mandated by New York State Labor
Law on the days he worked more than 10 hours.  For several weeks during his employment,
Plaintiff was not paid at all.

3.    Plaintiff, by his attorneys, seeks his unpaid wages, liquidated damages, interest, and attorneys' fees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq.*, and New York Labor Law, Article 6, 190 *et seq.*, and Article 19, 650 *et seq.*

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over Plaintiff's claims under FLSA pursuant to 28 U.S.C. 1331 and 29 U.S.C. 216(b).  The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

5.    Plaintiff consents in writing to be a party to this action pursuant to 29 U.S.C. 216(b).  His written consent is attached hereto and incorporated by reference.

6.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. 1391 as a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

7.    Plaintiff Lucio Mendez is an adult individual currently residing in New York City, in the County of Queens.

8.    Upon information and belief, Defendant Suan Lay Ong, a/k/a Janice Ong ("Defendant Ong"), is an adult individual currently residing in New York City, in the county of New York.

9.    Upon information and belief, Defendant Red Dot Com, Inc., is a foreign business corporation, organized under the laws of Delaware, with its principal New York office located at 200 E. 89th St., Suite 44-S, New York, New York 10128.

10.    Upon information and belief, Defendant Red Dot Com, Inc. operated under the trade name "Tangerine Restaurant and Café" ("Tangerine Restaurant").

11.   Upon information and belief, Nooch, Inc. ("Nooch Restaurant") is a domestic business corporation, organized under the laws of New York, with its principal place of business located at 143 Eighth Avenue, New York, NY 10011.

### STATEMENT OF FACTS
### *WAGE AND HOUR VIOLATIONS*

12.   Plaintiff was hired to perform janitorial and dishwashing services at Tangerine Restaurant soon after it opened in or around May 2001.

13.   Plaintiff was informed that he would be paid a wage of $250 per week, regardless of the hours he worked.

14.   Approximately one month after Plaintiff began work, his pay was raised to $400 per week.

15.   Upon information and belief, the agent who hired Plaintiff acted on the authority and at the behest of Defendant Ong and Defendant Red Dot Com, Inc.

16.   With the exception discussed *infra* at Paragraphs 24 through 31, Plaintiff continued to be paid at the rate of $400 per week for the duration of his employment, regardless of the hours he worked.

17.   Throughout his employment at Tangerine Restaurant, Plaintiff worked approximately 74 hours per week.

18.   This resulted in an effective hourly wage ranging from approximately $3.37 - $5.40 per hour without any overtime premium.

19.   Plaintiff never received overtime premium pay for hours exceeding 40 in a given week at Tangerine Restaurant.

20.   Plaintiff routinely worked more than 10 hours in a day at Tangerine Restaurant.

21.    Defendants never paid Plaintiff spread of hours pay, or an extra hour of pay at the minimum wage rate, for those days when Plaintiff worked more than 10 hours in a day.

22.    Plaintiff never received tips for his work at Tangerine Restaurant.

23.    Plaintiff never received a 30-minute lunch break during his employment at Tangerine Restaurant.

24.    From approximately mid-May 2003 through the end of his employment at Tangerine Restaurant in July 2004, a period of approximately 61 weeks, Defendants paid Plaintiff different amounts each week.

25.    During this period, Plaintiff's weekly pay dropped as low as $200 per week.

26.    Many weeks during this period, Plaintiff was not paid at all.

27.    During this period, Plaintiff continued to work approximately 74 hours per week.

28.    During this period, Plaintiff's effective hourly rate of pay dropped as low as $2.70 per hour without any overtime premium.

29.    On approximately four occasions during this period, Defendants supplemented Plaintiff's pay to compensate for several weeks of non-payment.

30.    When this happened, Plaintiff's weekly pay was $600 - $800.

31.    On average, Plaintiff's weekly pay during this period was approximately $288.50 per week.

32.    In or around April 2004, Defendant Ong informed Plaintiff that Tangerine Restaurant was going out of business.

33.    Plaintiff ceased working at Tangerine Restaurant when he and his co-workers arrived at work one morning in approximately July 2004 to find that the restaurant was closed.

34.    In or around September 2004, Defendant Ong personally asked Plaintiff to come to work for her new business, Nooch Restaurant.

35.    For two days in approximately September 2004, Plaintiff performed janitorial work to prepare Nooch Restaurant for its opening.

36.    Aside from $10 he was given by a kitchen worker, Plaintiff received no compensation at all for these eight hours of work.

37.    In or around September 2004, when Nooch Restaurant opened for business, Plaintiff was hired to perform janitorial, dishwashing, and bus boy services at Nooch Restaurant.

38.    Upon information and belief, the agent who hired Plaintiff acted on the authority and at the behest of Defendant Ong and Defendant Nooch, Inc.

39.    Upon information and belief, several of Tangerine Restaurant's former employees were employed at Nooch Restaurant.

40.    Defendants paid Plaintiff $400 per week for his work at Nooch Restaurant, regardless of the hours worked by Plaintiff.

41.    Plaintiff routinely worked between 92 and 111 hours per week at Nooch Restaurant.

42.    This resulted in an effective hourly wage ranging from approximately $3.60 - $4.35 per hour without any overtime premium.

43.    Plaintiff never received overtime premium pay for hours exceeding 40 in a given week at Nooch Restaurant.

44.    Plaintiff routinely worked more than 10 hours in a day at Nooch Restaurant.

45.    Defendants never paid Plaintiff spread of hours pay, or an extra hour of pay at the minimum wage rate, for those days when Plaintiff worked more than 10 hours in a day.

46.    Plaintiff never received tips for his work at Nooch Restaurant.

47.    Plaintiff never received a 30-minute lunch break during his employment at Nooch Restaurant.

48.    Plaintiff left his employment Nooch Restaurant on or about March 20, 2005.

49.    Upon information and belief, during the time that Plaintiff was employed by Defendants at Tangerine Restaurant and Nooch Restaurant, Defendants did not maintain in the workplace a display containing notices of employee rights to receive the minimum wage and overtime at a rate of one and one-half their regular rate, as required under both the FLSA and New York Labor Law.

50.    Upon information and belief, during the time that Plaintiff was employed by Defendants, Defendants did not maintain in the workplace a display containing a copy of New York Labor Law §§ 193, 196-d and any accompanying regulations as required by the New York Labor Law.

51.    On information and belief, during the relevant time periods Defendant Ong functioned as owner and controlling manager of Tangerine Restaurant and of Nooch Restaurant.

52.    On information and belief, Defendant Ong and/or her agents had control over Plaintiff's wages, hours, and working conditions at Tangerine Restaurant and at Nooch Restaurant.

53.    On information and belief, Defendant Ong and/or her agents had control over employee schedules and wage rates at Tangerine Restaurant and at Nooch Restaurant.

54.    On information and belief, employment records at Tangerine Restaurant and at Nooch Restaurant were maintained by Defendant Ong and/or her agents.

55.    Although Defendant Ong delegated some supervisory tasks to managers, she retained ultimate decisionmaking authority over all wages, hours, and working conditions at Tangerine Restaurant and at Nooch Restaurant.

56.    Upon information and belief, Defendant Red Dot Com, Inc. is a for-profit enterprise which engaged in commerce that generated more than $500,000 in gross revenues at all times relevant herein.

57.    Upon information and belief, Nooch, Inc. is a for-profit enterprise which engaged in commerce that generated more than $500,000 in gross revenues at all times relevant herein.

58.    By prior counsel, Plaintiff brought suit for unpaid wages in the Southern District of New York against Nooch, Inc. (Case No. 06 CV 867).

59.    The parties agreed to settle that claim for $9000, a sum which included attorneys' fees.

60.    The settlement amount did not include liquidated damages, as mandated by 26 U.S.C. § 216.

61.    The agreement entered into by the parties was not a judicially-approved stipulated settlement.

62.    Plaintiff has not legally waived of his claim for unpaid wages or overtime under the FLSA.

## FIRST CAUSE OF ACTION
### *Federal Minimum Wage Violations*

63.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

64.    At all times relevant herein, Plaintiff was an employee of Defendants within the meaning of 29 U.S.C. 203.

65.    At all times relevant herein, Defendants were Plaintiff's employer within the meaning of 29 U.S.C. 203.

66.    At all times relevant herein, Defendants required, suffered, or permitted Plaintiff to work.

67.    At all times relevant herein, Defendants were engaged in commerce within the meaning of 29 U.S.C. 203.

68.    At all times relevant herein, Plaintiff was employed in an enterprise engaged in commerce within the meaning of 29 U.S.C. 203.

69.    Defendants willfully failed to pay Plaintiff the federal minimum wage for the hours he worked, in violation of 29 U.S.C. 207.

70.    As a result of the foregoing, Plaintiff is entitled to recover from Defendants amounts to be proven at trial for his unpaid minimum wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. 216.

## SECOND CAUSE OF ACTION
### *Federal Overtime Violations*

71.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

72.    Defendants willfully failed to pay Plaintiff the appropriate overtime compensation for each hour worked in excess of 40 hours in a workweek as required under the Fair Labor Standards Act, 29 U.S.C. 207 (a)(1).

73.    As a result of the foregoing, Plaintiff is entitled to recover from Defendants amounts to be proven at trial for his unpaid overtime wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. 216.

## THIRD CAUSE OF ACTION
### *New York State Minimum Wage Violations*

74.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

75.   At all times relevant herein, Defendants were Plaintiff's employers within the meaning of New York Lab. L. 2 and 651.

76.   At all times relevant herein, Plaintiff was Defendants' employee within the meaning of New York Lab. L. 2 and 651.

77.   Defendants willfully failed to pay Plaintiff the New York State minimum wage for all hours he worked, in violation of New York Lab. L. 652;

78.   As a result of the foregoing, Plaintiff is entitled to recover from Defendants amounts to be proven at trial for his unpaid minimum wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to New York Lab. L. 663.

## FOURTH CAUSE OF ACTION
### *New York State Overtime Violations*

79.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

80.   Defendants willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at a rate not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of the New York Minimum Wage Act and its implementing regulations. N.Y. Lab. L. 650 et seq.; 12 NYCRR 142-2.2.

81.   Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants amounts to be proven at trial for his unpaid overtime wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to N.Y. Lab. L. 663.

## FIFTH CAUSE OF ACTION
### *New York State Payment of Wage Violations*

82.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

83.    At all times relevant herein, Plaintiff was a "clerical or other worker" employed by Defendants, as defined in New York Lab. L. 190.

84.    Defendants willfully failed to pay Plaintiff as required under New York Lab. L. 191.

85.    As a result of the foregoing, Plaintiff is entitled to recover from Defendants amounts to be proven at trial for his unpaid wages, damages for unreasonably delayed payment of wages, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to New York Lab. L. 198.

### SIXTH CAUSE OF ACTION
*New York State Spread of Hours Pay*

86.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

87.    Plaintiff routinely worked more than 10 hours a day.

88.    Defendants willfully failed to pay Plaintiff an extra hour of pay at the basic minimum rate for each day Plaintiff worked more than 10 hours ("spread of hours pay"), in violation of New York Lab. L. 650 et. seq.; 12 NYCRR 142-2.4.

89.    As a result of the foregoing, Plaintiff is entitled to recover from Defendants amounts to be proven at trial for his unpaid spread-of-hours pay, an additional amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to New York Lab. L. 663.

### SEVENTH CAUSE OF ACTION
*Quantum Meruit*

90.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

91.    Plaintiff conferred the benefit of his labor to Defendants in good faith and with the expectation of just payment. Defendants accepted the benefit of Plaintiff's work but deliberately failed to compensate him fairly.

92.    Defendants were unjustly enriched by their deliberate and intentional exploitation of Plaintiff's labor.

93.    As a result of the foregoing, Plaintiff has been injured, and Defendants have profited thereby, in amounts to be proven at trial.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court grant the following relief:

i.    Declare Defendants' conduct to be a violation of Plaintiff's rights under the Fair Labor Standards Act and the New York Minimum Wage Act;

ii.    Award Plaintiff minimum wages and overtime compensation due under the Fair Labor Standards Act and an additional equal amount as liquidated damages because of Defendants' willful failure to pay overtime pay, pursuant to 29 U.S.C. 216;

iii.    Award Plaintiff unpaid minimum wages and an additional 25% as liquidated damages, pursuant to New York Lab. L. 663(1);

iv.    Award Plaintiff unpaid overtime and spread-of-hours compensation, pursuant to the New York Minimum Wage Act regulations, and an additional 25% as liquidated damages, pursuant to New York Lab. L. 663(1);

v.   Award Plaintiff amounts to be proven at trial for his unpaid wages, damages for

unreasonably delayed payment of wages, and an additional 25% as liquidated damages,

pursuant to New York Lab. L. 198.

vi.   Award Plaintiff an amount to be proven at trial for Defendants' unjust enrichment from

Plaintiff's labor;

vii.   Award Plaintiff prejudgment interest; and

viii.   Award Plaintiff the costs of this action together with reasonable attorneys' fees and such

other and further relief as this court deems necessary and proper.

DATED this 12th day of December, 2007.

MAKE THE ROAD NEW YORK, INC.
By: Amy Carroll (AC 5640)
301 Grove Street
Brooklyn, NY 11237
Phone: 718-418-7690
Fax: 718-418-9635

## <u>AUTHORIZATION PURSUANT TO 29 U.S.C. §216(b)</u>

I, LUCIO MENDEZ, hereby consent to be a plaintiff in this lawsuit pursuant to §216(b) of the Fair Labor Standards Act.

Date: December 3, 2007

LUCIO MENDEZ

Exhibit B
Proof of Service

**GLOBAL PROCESS SERVICE CO., INC.**
291 BROADWAY, SUITE 1504
NEW YORK, NY 10007
LIC. # 887-054

UNITED STATES DIST. C. SOUTHERN DIST.
**COUNTY OF** NEW YORK

Index No. 07 CV 11174

LUCIO MENDEZ

- against -

Plaintiff(s)

**AFFIDAVIT OF SERVICE**

NOOCH, INC. ET AL

Defendant(s) SUMMONS & COMPLAINT

STATE OF NEW YORK: COUNTY OF NEW YORK        ss:

DANIEL MILLER        BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on 03/24/08 at 0250PM Hours at C/O SEC. OF STATE 99 WASHINGTON AVENUE ALBANY NY
deponent served the within SUMMONS & COMPLAINT                                        on
RED DOT COM INC.                                        therein named,

**INDIVIDUAL A** ☐ by delivering a true copy of each to said personally; deponent knew the person so served to be the person described as said person therein.        ☐ (S) He identified (her) himself as such.

two copies
**CORPORATION B** ☒ a (domestic) (foreign) corporation by delivering thereat a true copy of each to DONNA CHRISTIE
personally, deponent knew said corporation so served to be the corporation described in legal papers and knew said individual to be        AUTHORIZED AGENT        thereof

**SUITABLE AGE PERSON C** ☐ by delivering thereat a true copy of each to
a person of suitable age and discretion. Said premises is recipient's (actual place of business ) (dwelling house) (usual place of abode)
within the state.        ☐ (S) He identified (her) himself as        of recipient.

**AFFIXING TO DOOR, ETC. D** ☐ by affixing a true copy of each to the door of said premises, which is recipient's (actual place of business) (dwelling house) (usual place of abode) within the state. Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereat, having called there on the dates below:

Service upon the N.Y.S. Secretary of State under Section 306 of the B.C.L. and tendering a fee of $40.00

**MAILING USE WITH C or D** ☐ Deponent also enclosed a copy of same in a postpaid sealed wrapper properly addressed to the above recipient
at        and deposited
said wrapper in (a post office) official depository under exclusive care and custody of the United States Postal Service within New York State.

Deponent further states that he describes the person actually served as follows

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx.) |
|---|---|---|---|---|---|
| FEMALE | WHITE | BLOND | 35 | 5'5 | 140 |

**MILITARY SERVICE** ☐ Above person has asked, whether the recipient (s) was (were) in the military service of the State of New York or the United States and received a negative reply. Upon information and belief based upon the conversation and observation as aforesaid deponent avers that the recipient (s) is (are) not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

That at the time of such service deponent knew the person (s) so served as aforesaid to be the same person (s) mentioned and described as the defendant(s) in this action.

**USE IN NYC CIVIL CT.** ☐ The language required by NYCRR 2900.2(e), (f) & (h) was set forth on the face of said summons (es).

Sworn to before
me on the

03/25/08

SANDRA FARRON
Notary Public, State of New York
No. 01FA4784241
Qualified in Nassau County
Commission Expires Sept. 30, 2009

DANIEL MILLER

LICENSE No.

# 116267

**GLOBAL PROCESS SERVICE CO., INC.**
291 BROADWAY, SUITE 1504
NEW YORK, NY 10007
LIC. # 887-054

UNITED STATES DIST. CT. SOUTHERN DIST.
**COUNTY OF** NEW YORK

Index No. 07 CV 11174

LUCIO MENDEZ

Plaintiff(s)

- against -

**AFFIDAVIT OF SERVICE**

NOOCH, INC. ET AL

Defendant(s)    SUMMONS & COMPLAINT

**STATE OF NEW YORK: COUNTY OF NEW YORK    SS:**

DANIEL MILLER    BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY
TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

**That on** 03/24/08 at 0250PM Hours at C/O SEC. OF STATE 99 WASHINGTON AVENUE ALBANY NY
**deponent served the within** SUMMONS & COMPLAINT    therein named,    on

NOOCH, INC.

**INDIVIDUAL A** ☐    by delivering a true copy of each to said personally; deponent knew the person so served to be the person described as said person therein.
(S) He identified (her) himself as such.

**CORPORATION B** ☐    x x x    two copies    DONNA CHRISTIE
XX    a (domestic) (foreign) corporation by delivering thereat a true copy of each to
personally, deponent knew said corporation so served to be the corporation described in legal papers and knew said individual to be    AUTHORIZED AGENT    thereof

**SUITABLE AGE PERSON C** ☐    by delivering thereat a true copy of each to
a person of suitable age and discretion. Said premises is recipient's (actual place of business) (dwelling house) (usual place of abode)
within the state.    (S) He identified (her) himself as    of recipient

**AFFIXING TO DOOR, ETC. D** ☐    by affixing a true copy of each to the door of said premises, which is recipient's (actual place of business) (dwelling house) (usual place of abode) within the state. Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereat, having called there on the dates below:

Service upon the N.Y.S. Secretary of State under Section
306 of the B.C.L. and tendering a fee of $40.00

**MAILING USE WITH C or D** ☐    Deponent also enclosed a copy of same in a postpaid sealed wrapper properly addressed to the above recipient at    and deposited

said wrapper in (a post office) official depository under exclusive care and custody of the United States Postal Service within New York State.
Deponent further states that he describes the person actually served as follows

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx.) |
|-----|-----------|-----------|---------------|------------------|------------------|
| FEMALE | WHITE | BLOND | 35 | 5'5 | 140 |

**MILITARY SERVICE** ☐    Above person has asked, whether the recipient (s) was (were) in the military service of the State of New York or the United States and received a negative reply. Upon information and belief based upon the conversation and appearance as aforesaid deponent avers that the recipient (s) is (are) not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

That at the time of such service deponent knew the person (s) so served as aforesaid to be the same person (s) mentioned and described as the defendant(s) in this action.

**USE IN NYC CIVIL CT.** ☐    The language required by NYCRR 2900.2(e), (f) & (h) was set forth on the face of said summons (es).

Sworn to before
me on the

SANDRA FARRON
Notary Public, State of New York
No. 01FA4784241
Qualified in Nassau County
Commission Expires Sept. 30, 2009

03/25/08

DANIEL MILLER
LICENSE No.

# 116268

# Exhibit C
## Affidavit of Lucio Mendez

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :

LUCIO MENDEZ,                           :

                        Plaintiff,       :    ECF Case

                               :    Docket Number 07 CV 11174 (LLS)

            -against-          :

                               :

NOOCH, INC.; RED DOT COM, INC. d/b/a/  :    **AFFIDAVIT OF LUCIO MENDEZ**
Tangerine Restaurant and Café; and SUAN LAY  :
ONG, a.k.a. Janice Ong,                :

                               :

                   Defendants.     :

                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

County of Kings       )
                    ) ss:
State of New York    )

Lucio Mendez, being duly sworn, deposes and says:

    1.      I am a plaintiff in this action.

    2.      From approximately May 2001 through approximately the first or second week of

July 2004, I worked in a restaurant called Tangerine, which was located at 228 West 10th St.,

New York, NY 10014.

    3.      Tangerine served noodle soups and Asian food.

    4.      I worked at Tangerine washing dishes, cleaning the restaurant, receiving

deliveries of food and alcohol, and re-stocking the kitchen and bar.

    5.      A manager hired me to work at Tangerine.

    6.      A woman called Janice Ong was the owner of Tangerine.  She usually came to the

restaurant every day.  She would come to pick up money, pay bills, or tell the managers what to

do. Before she would arrive, the cooks would often tell me to be sure to clean extra well, because the boss was coming. She liked me, and she often said to me, "Lucio, I like how you work." I saw her fire several employees during my time working at Tangerine.

7.     When I started work, my manager told me that I would be paid $250.00 per week. This is what I earned for my first month of work.

8.     After that first month, another employee who did my same job quit. Instead of hiring someone else, my manager told me that if I could do his work too, I would be paid $400.00 per week. I agreed, and that was the arrangement for the rest of my time at Tangerine.

9.     I usually worked the same schedule every week at Tangerine. I was required to come to work every day at 2:00 p.m. On days that were not busy, usually Monday through Wednesday, I would get out of work at between 1:00 a.m. and 2:00 a.m. On busy nights, which were usually Thursday through Saturday, I would get out of work at around 3:00 a.m. or 4:00 a.m. I worked seven days per week for my first two months, but after that I got Sundays off because the restaurant wasn't as busy. In total, I usually worked between 74 and 78 hours per week at Tangerine.

10.    I was never paid time and a half when I worked more than 40 hours per week at Tangerine. I received a flat salary for the entire week of work.

11.    I never received extra pay when I worked more than 10 hours in a day.

12.    I never received tips for my work at Tangerine.

13.    Starting in around mid-May 2003, my manager stopped paying me my full weekly wage. When I asked why, he said "No busy, no busy." He always told me that they would pay me later, and that I needed to wait.

2

14.     Sometimes, I would go a full month without receiving any wages, and then my manager would pay me as much as $800.00 to try to make up for it.  Other times, I would just receive $200.00 per week.

15.     Because I wanted to make sure I knew how much money I was owed, I started keeping my own records of the weeks I worked and the amounts I was paid.  Whenever I received a payment, I wrote down the amount next to the date in a notebook.  Copies of my records are attached to this affidavit as Exhibit D.  They cover the time period from May 2003 when I stopped receiving my full wages to mid-July 2004 when the restaurant closed.  The first page lists the weeks that I worked.  The second page lists the dates I was paid wages.

16.     In around April 2004, one of the cooks told me that Janice was going to open another restaurant called Nooch.

17.     One day in July 2004, my co-workers and I came to work, but the locks had been changed and my keys didn't work.  That was how I found out that Tangerine was closed, and I didn't work there anymore after that.

18.     In around September 2004, when I had been out of work for almost two months, Janice Ong called me.  She told me that she wanted me to come the next day to work in her new restaurant, Nooch, doing the same job I had done at Tangerine.  She told me when and where to go, and the next day I began working for her again.

19.     I spent two or three days cleaning Nooch before it opened.  I spent about eight hours working in total.

20.     Janice did not pay me any money at all for this work.  One of the members of the kitchen staff felt sorry for me and gave me $10.00 to pay for my transportation.

21.     After Nooch opened for business a few days later, I began working there. When pay day came, the manager of Nooch, Paul, asked me, "How much are you supposed to make?" I told him that I earned $400.00. I remember that Paul was surprised, and he said, "That's way too much!" I explained that this was my wage previously, and that it was a lot of work at Nooch and I couldn't do it for less than that.

22.     Although I received the same wage at Nooch as I had earned at Tangerine, $400.00 per week, I was required to work many more hours.

23.     During my first five weeks of work, I worked seven days per week. I worked from 9:00 a.m. to midnight on Mondays, and from 9:00 a.m. to 1:00 a.m. on Tuesdays through Sundays.

24.     During my second month of work, I worked the same schedule, but I got Tuesdays off.

25.     For about two months after that, I worked Mondays, Wednesdays, and Thursdays from 9:00 a.m. to midnight, and Fridays, Saturdays, and Sundays from 9:00 a.m. to 1:00 a.m.

26.     For the rest of my work there, I worked Mondays, Wednesdays, Thursdays, and Fridays from 9:00 a.m. to midnight, and Saturdays and Sundays from 9:00 a.m. to 1:00 a.m.

27.     I was never paid time and a half when I worked more than 40 hours per week. I received a flat salary for the entire week of work.

28.     I quit working at Nooch on approximately March 20, 2005. I quit because the hours were very long, because I was required to wash dishes in a cold back room, in cold water in the middle of winter, and because I was required to carry heavy stacks of dishes and food up and down long sets of stairs to and from the kitchen, which was difficult and at times painful.

4

29.     At Tangerine and at Nooch, I never saw Janice or any of her managers write down the hours I worked or the pay I received. I punched a timeclock at Tangerine and at Nooch, but I never understood why because they didn't pay me by the hour.

30.     After I left my employment at Nooch, I went to a community-based organization called Make the Road By Walking because I heard they helped people who were owed wages. A lawyer there, Deborah Axt, told me that I had a right to file a lawsuit for the wages I was owed. She referred me to a lawyer named Justin Zeller, who filed a lawsuit against Nooch on my behalf in 2006.

31.     After a few months, my lawyers told me that the accountant for Nooch wanted to settle my case. The accountant wrote me two checks totaling $5725.00. I felt that this was much less than what I should have been paid for my years of work. My lawyers at Make the Road New York told me that I could file another lawsuit for the rest of the wages I was owed. This is what I decided to do.

I HEREBY SWEAR UNDER PENALTY OF PERJURY THAT THE ABOVE IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Signed: _____          Dated: 5/23/008
        Lucio Mendez

The individual known to me to be Lucio Mendez appeared before me this 23 day of May, 2008, and affixed his signature to this document above.

Signed: _____
        Notary Public

AMY CARROLL
NOTARY PUBLIC-STATE OF NEW YORK
NO. 02CA6130989
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES JULY 25, 20 09

5

TRANSLATOR'S CERTIFICATE

I, Elizabeth Wagoner, certify that I am fluent in both Spanish and English, that I have correctly and accurately prepared this affidavit for Lucio Mendez based on his testimony to me in Spanish, that I then read it back to him in Spanish, and that he assured me that he understood this affidavit and that it was correct.

Signed:  Elizabeth Wagoner

Dated:  5/23/08

6

Exhibit D
Lucio Mendez Contemporaneous Records of Weeks
Worked and Wages Paid

**Transcription of Lucio Mendez Records**

| Week beginnning | Week ending | Date Paid | Paid |
|---|---|---|---|
| 5/12/03 | 5/17/03 | 5/19/03 | $200 |
| 5/19/03 | 5/24/03 | 5/24/03 | $200 |
| 5/26/03 | 5/31/03 | | |
| 6/2/03 | 6/7/03 | | |
| 6/9/03 | 6/14/03 | | |
| 6/16/03 | 6/21/03 | 6/23/03 | $400 |
| 6/23/03 | 6/28/03 | 6/28/03 | $400 |
| 6/30/03 | 7/5/03 | | |
| 7/7/03 | 7/12/03 | | |
| 7/14/03 | 7/19/03 | | |
| 7/21/03 | 7/26/03 | 8/8/03 | $400 |
| 7/28/03 | 8/2/03 | 8/9/03 | $400 |
| 8/4/03 | 8/9/03 | | |
| 8/11/03 | 8/16/03 | 8/18/03 | $200 |
| 8/18/03 | 8/23/03 | 8/23/03 | $200 |
| 8/25/03 | 8/30/03 | 8/30/03 | $200 |
| 9/1/03 | 9/6/03 | 9/6/03 | $200 |
| 9/8/03 | 9/13/03 | 9/15/03 | $200 |
| 9/15/03 | 9/20/03 | 9/20/03 | $200 |
| 9/22/03 | 9/27/03 | 9/22/03 | $400 |
| 9/29/03 | 10/4/03 | 9/29/03 | $200 |
| | | 10/3/03 | $200 |
| | | 10/4/03 | $400 |
| 10/6/03 | 10/11/03 | 10/11/03 | $200 |
| 10/13/03 | 10/18/03 | 10/24/03 | $600 |
| 10/20/03 | 10/25/03 | 11/7/03 | $400 |
| 10/27/03 | 11/1/03 | 11/10/03 | $400 |
| 11/3/03 | 11/8/03 | 11/17/03 | $400 |
| 11/10/03 | 11/15/03 | 11/21/03 | $400 |
| 11/17/03 | 11/22/03 | 11/22/03 | $400 |
| 11/24/03 | 11/29/03 | 11/24/03 | $400 |
| | | 11/26/03 | $400 |
| 12/1/03 | 12/6/03 | 12/6/03 | $400 |
| 12/8/03 | 12/13/03 | 12/15/03 | $400 |
| 12/15/03 | 12/20/03 | | |
| 12/22/03 | 12/27/03 | 1/2/04 | $800 |
| 12/29/03 | 1/3/04 | | |
| 1/5/04 | 1/10/04 | 1/12/04 | $200 |
| 1/12/04 | 1/17/04 | 1/23/04 | $200 |
| 1/19/04 | 1/24/04 | 1/26/04 | $400 |
| 1/26/04 | 1/31/04 | 1/31/04 | $400 |
| 2/2/04 | 2/7/04 | 2/6/04 | $400 |
| 2/9/04 | 2/14/04 | 2/14/04 | $400 |
| 2/16/04 | 2/21/04 | 2/23/04 | $400 |
| 2/23/04 | 2/28/04 | 3/1/04 | $200 |
| 3/1/04 | 3/6/04 | | |

| | | | |
|---|---|---|---|
| 3/8/04 | 3/13/04 | 3/13/04 | $200 |
| 3/15/04 | 3/20/04 | 3/20/04 | $400 |
| 3/22/04 | 3/27/04 | 3/27/04 | $400 |
| 3/29/04 | 4/3/04 | 4/3/04 | $400 |
| 4/5/04 | 4/10/04 | 4/9/04 | $400 |
| 4/12/04 | 4/17/04 | 4/17/04 | $400 |
| 4/19/04 | 4/24/04 | 4/24/04 | $400 |
| 4/26/04 | 5/1/04 | 5/1/04 | $400 |
| 5/3/04 | 5/8/04 | 5/12/04 | $400 |
| 5/10/04 | 5/15/04 | 5/17/04 | $400 |
| 5/17/04 | 5/22/04 | | |
| 5/24/04 | 5/29/04 | 6/4/04 | $200 |
| 5/31/04 | 6/5/04 | 6/7/04 | $200 |
| 6/7/04 | 6/12/04 | 6/11/04 | $400 |
| 6/14/04 | 6/19/04 | 6/25/04 | $400 |
| 6/21/04 | 6/26/04 | | |
| 6/28/04 | 7/3/04 | 7/5/04 | $400 |
| 7/5/04 | 7/9/03 | | |

**Total Paid**          $17,600

**Total Weeks
Worked**                 61

**Average Paid
Per Week**        $288.52

Weeks worked

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 12-17 | 03 | | 11 | 24-29 | 03 | 6 | 7 | 12 | 04 |
| 5 | 19 | 24 | 03 | 12 | 1 | 6 | 03 | 6 | 14 | 19 | 04 |
| 5 | 26 | 31 | 03 | 12 | 8 | 13 | 03 | 6 | 21 | 26 | 04 |
| 6 | 2 | 7 | 03 | 12 | 15 | 20 | 03 | 6-7 | 28 | 3 | 04 |
| 6 | 9 | 14 | 03 | 12 | 22 | 27 | 03 | 7 | 5 | -9 | 04 |
| 6 | 16 | 21 | 03 | 12-1 | 29 | 3 | 04 | | | | |
| 6 | 23 | 28 | 03 | 1 | 5 | 10 | 04 | | | | |
| 6 | 30-7 | 5 | 03 | 1 | 12 | 17 | 04 | | | | |
| 7 | 7 | 12 | 03 | 1 | 19 | 24 | 04 | | | | |
| 7 | 14 | 19 | 03 | 1 | 26 | 31 | 04 | | | | |
| 7 | 21 | 26 | 03 | 2 | 2 | 7 | 04 | | | | |
| 7 | 28 | 2 | 03 | 2 | 9 | 14 | 04 | | | | |
| 8 | 4 | 9 | 03 | 2 | 16 | 21 | 04 | | | | |
| 8 | 11 | 16 | 03 | 2 | 23 | 28 | 04 | | | | |
| 8 | 18 | 23 | 03 | 3 | 1 | 6 | 04 | | | | |
| 8 | 25 | 30 | 03 | 3 | 8 | 13 | 04 | | | | |
| 9 | 1 | 6 | 03 | 3 | 15 | 20 | 04 | | | | |
| 9 | 8 | 13 | 03 | 3 | 22 | 27 | 04 | | | | |
| 9 | 15 | 20 | 03 | 3-4 | 29 | 3 | 04 | | | | |
| 9 | 22 | 27 | 03 | 4 | 5 | 10 | 04 | | | | |
| 9-10 | 29 | 4 | 03 | 4 | 12 | 17 | 04 | | | | |
| 10 | 6 | 11 | 03 | 4 | 19 | 24 | 04 | | | | |
| 10 | 13 | 18 | 03 | 4 | 26 | 1 | 04 | | | | |
| 10 | 20 | 25 | 03 | 5 | 3 | 8 | 04 | | | | |
| 10-11 | 27 | 1 | 03 | 5 | 10 | 15 | 04 | | | | |
| 11 | 3 | 8 | 03 | 5 | 17 | 22 | 04 | | | | |
| 11 | 10 | 15 | 03 | 5 | 24 | 29 | 04 | | | | |
| 11 | 17 | 22 | 03 | 5-6 | 31 | 5 | 04 | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5 | 14 | 24$205 | | | | | Amts. paid |
| 6 | 23/ | 28/ $300+100+400 | | | | | |
| 8 | 8 | $300+100 | | | | | |
| 8 | 9 | $400 | 03 | 2 | 6 | $400 | 04 |
| 8 | 18 | $200 | 03 | 2 | 14 | $400 | 04 |
| 8 | 23 | $200 | 03 | 2 | 23 | $400 | 04 |
| 8 | 30 | $200 | 03 | 3 | 1 | $200 | 04 |
| 9 | 6 | $200 | 03 | 3 | 13 | $200 | 04 |
| 9 | 15 | $200 | 03 | 3 | 20 | $400 | 04 |
| 9 | 20 | $200 | 03 | 3 | 27 | $400 | 04 |
| 9 | 22 | $400 | 03 | 4 | 3 | $400 | 04 |
| 9 | 29 | $200 | 03 | 4 | 9 | $400 | 04 |
| 10 | 3 | $200 | 03 | 4 | 17 | $400 | 04 |
| 10 | 4 | $400 | 03 | 4 | 24 | $400 | 04 |
| 10 | 11 | $200 | 03 | 5 | 1 | $400 | 04 |
| 10 | 24 | $600 | 03 | 5 | 12 | $400 | 04 |
| 11 | 7 | $400 | 03 | 5 | 17 | $400 | 04 |
| 11 | 10 | $400 | 03 | 6 | 4 | $200 | 04 |
| 11 | 17 | $400 | 03 | 6 | 7 | $200 | 04 |
| 11 | 21 | $400 | 03 | 6 | 11 | $400 | 04 |
| 11 | 22 | $400 | 03 | 6 | 25 | $400 | 04 |
| 11 | 24 | $400 | 03 | 7 | 5 | $400 | 04 |
| 11 | 26 | $400 | 03 | | | | |
| 12 | 6 | $400 | 04 | | | | |
| 12 | 15 | $400 | 04 | | | | |
| 1 | 2 | $800 | 04 | | | | |
| 1 | 12 | $200 | 04 | | | | |
| 1 | 23 | $200 | 04 | | | | |
| 1 | 26 | $400 | 04 | | | | |
| 1 | 31 | $400 | | | | | |
| 2 | | | | | | | |